Commonwealth of Pennsylvania, Department of General Services, Appellant *v.* Leroy E. Fake and Florence M. Ditzler, Heirs of Edward D. Fake, a/k/a Edward Fake, Appellees.

Argued March 8, 1979, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*H. Warren Ragot*, Assistant Attorney General, with him *Theodore A. Adler,* Chief Counsel, for appellant.

*Peter J. Dubinsky,* for appellees.

OPINION BY JUDGE CRAIG, August 13, 1979:

This is an appeal by the Department of General Services of the Commonwealth of Pennsylvania (con-

demnor) from an order of the Court of Common Pleas of Lebanon County denying condemnor's motion for a new trial. We affirm the lower court.

In 1976, the condemnor condemned two tracts of land owned by Leroy Fake and Florence Ditzler (condemnees), consisting of an eight-acre and a sixty-one-acre tract, separated by a public road. The condemnees also owned, by separate deed, a mountain tract of approximately 112 acres, located directly behind the 61-acre tract. At the time of taking, the condemnor took the entire 61-acre tract, leaving condemnees no access to their 112 acres. However, at the time of the jury trial, the condemnor granted the condemnees a 20-foot right-of-way across the 61 acres, providing access to the 112 acres to that extent.

After the condemnation, a board of viewers awarded condemnees $104,000.00 in damages. Both parties appealed to the lower court, pursuant to Section 515 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-515. A jury awarded the condemnees $159,000.00 in damages. The condemnor filed a motion for new trial, which the lower court denied. The condemnor then appealed to this Court.

At trial, the condemnees made a substantial effort to show damage to the 112 acres in addition to the damages to the condemned 69 acres. They offered evidence that the highest and best use of the 112 acres was for residential and recreational development purposes, and that the twenty-foot access granted by the condemnor was insufficient to permit that use.[1]

---

[1] Section 603 of the Code, 26 P.S. §1-603, authorizes consideration of the highest and best use of a property in determining its fair market value. The condemnees' witnesses claimed that a 50-foot right-of-way is the minimum required, by good design as well as law, for access to residential developments. That testimony was not contradicted by the condemnor's witness.

A basic problem in this case is whether the 112 acres must be treated separately from the 69 acres in determining damages, or as part of a single tract comprising it and the 69 acres. At trial, the parties were apparently uncertain which of those approaches to apply to the 112 acres. Therefore, the record is confusing on that point, and we are presented with a difficult analysis, requiring consideration of several points.

First, where, as here, two contiguous tracts are owned by the same people, they are to be treated as one tract in assessing damages. Section 605, of the Code, 26 P.S. §1-605. *Frick Coke Co. v. Painter*, 198 Pa. 468, 48 A. 302 (1901). *See also Elgart v. Philadelphia*, 395 Pa. 343, 149 A.2d 641 (1959), and *Moore v. Montgomery County*, 22 Pa. Commonwealth Ct. 262, 348 A.2d 762 (1975).

A second point is that the jury returned a one-figure verdict in the amount of $159,000 without objection by the parties. That single verdict apparently embraces both damages for the taking of the 69 acres and severance damages as to the 112 acres.

The Code certainly contemplates an award for severance damages. Section 601, 26 P.S. §1-601, entitles a condemnee to just compensation "for the taking, *injury* or destruction of his property. . . ." (Emphasis supplied.) Section 518, 26 P.S. §1-518, suggests that a single-figure general verdict is appropriate in these circumstances, stating:

> (a) Upon appeal from an award of viewers, the court, upon the request of the plaintiff, shall, after the jury or the court, if the trial is without jury, has returned its *general verdict*, make a specific finding and allocation of the amount of the general verdict attributable to severance damages to the part of the property not taken. (Emphasis supplied.)

Section 606, 26 P.S. §1-606, also indicates contemplation of severance damages when there has been a partial taking by stating:

In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits especially affecting the remaining property due to its proximity to the improvement for which the property was taken.

Therefore, considering both the 69 acres and the 112 acres as one tract, the single-figure award by the jury was proper, and properly consisted of damages both for taking of the 69 acres and severance of the 112 acres.

Moreover, just compensation is simply the difference between the fair market value of the condemnee's entire property interest before condemnation and after condemnation. Therefore, under normal circumstances, a verdict will consist only of a single figure.[2] That single figure is the general verdict discussed in Section 518, *supra.*

A third point, however, is that, even though the verdict here followed the single-figure rule, that evidentiary presentation did not. Both parties offered separate valuations for the 69 acres which were taken and for the severed 112 acres. Although such separate valuations are unusual, we need not decide whether they were improper. The condemnor did not object at trial to the separate valuations, or raise that issue in its motion for new trial. Therefore, it did

---

[2] Section 518(b) of the Code, and Article VI-A, 26 P.S. §§1-601A-1-606A, award special damages for specifically enumerated expenses, such as moving and removal expenses, and business dislocation damages. However, none of those special damages applies in the present case. Therefore, the single-figure general verdict is all that could be awarded by the jury in this case.

not preserve that issue for appeal, and we cannot consider it. *Nobel v. West Penn Power Co.*, 36 Pa. Commonwealth Ct. 577, 388 A.2d 781 (1978).

A fourth point is that because the compensation for injury to the 112 acres is severance damages under the authority of the Code sections quoted above, there is no need to decide whether or not Section 612 of the Code, 26 P.S. §1-612, is confined to consequential damages arising only from highway or municipal improvements, as condemnor would have us do. Section 612 is not needed as a basis for the award.

We now must turn to the condemnor's contention that the testimony offered by the condemnees at trial on the highest and best use of the property was too speculative, and that therefore the lower court erred. We find that argument to be without merit.

Section 603 of the Code, 26 P.S. §1-603, permits the highest and best use to be considered in determining the fair market value of a property. The market value of a piece of property may reflect one of a number of possible uses of the land, even though the land was not used for that purpose at the time of condemnation. However, to prove the highest and best use, a condemnee must establish that the land is physically adaptable to such use and that there is a need for such use in the area, which is reflected in the market for the property at the time of condemnation. *Stoner v. Metropolitan Edison Co.*, 439 Pa. 333, 266 A.2d 718 (1970).

The condemnees' testimony, as noted above, was that the highest and best use for the 112 acres was development for residential and recreational use. The condemnor argues that the condemnees did not offer any evidence to show that sewage permits would have been issued for the land or that it would have passed percolation tests.

Nevertheless, the evidence of market value for such development was not too indefinite. The court below, in its opinion denying the condemnor's motion for a new trial, correctly determined that the evidence of development potential was sufficient. On an appeal from the denial of a motion for a new trial, we will reverse only if the lower court manifestly abused its discretion or committed a clear error of law, which controlled the outcome of the case. *Nobel, supra; Brown v. Redevelopment Authority of the City of Harrisburg*, 35 Pa. Commonwealth Ct. 415, 386 A. 2d 1052 (1978). Because of the extensive consideration given the question of the sufficiency of the evidence on highest and best use by the lower court, both in its charge to the jury and its opinion denying the motion for new trial, we hold that it did not manifestly abuse its discretion or commit a clear error of law in permitting the jury to consider the evidence that the highest and best use of the 112 acres was for the development purposes described.

Two other arguments of the condemnor must also be rejected.

The condemnor argues that its case was prejudiced at trial when counsel for the condemnees in his closing to the jury referred to the sentimental value of the condemned property to the condemnees. The condemnor contends that the court in its charge to the jury did not cure any prejudice the condemnor suffered by such remarks. We disagree. President Judge GATES' charge sufficiently cured any possible prejudice to the condemnor.

Finally, the condemnor argues that the lower court erred when it initially requested the jury to enter a separate verdict on the fair market value of the 112 acres before the condemnation, as well as a verdict on the just compensation for the taking. We need not decide whether that direction to the jury consti-

tuted reversible error, because, at the request of both counsel, the lower court withdrew its direction for a separate verdict, and clearly and unmistakably directed the jury not to make a special finding of the value of the mountain land before taking.

For the reasons set out above, we affirm the lower court's denial of the condemnor's motion for a new trial.

## ORDER

AND Now, this 13th day of August, 1979, the order of the Court of Common Pleas of Lebanon County, docketed at Civil Action—Law No. 142, 1976, dated April 21, 1978, is affirmed.

